A. A. and E. B. Jones Company, a Colorado corporation v. Commissioner.
A. A. & E. B. Jones Co. v. Commissioner
Docket Nos. 77680, 79682.
United States Tax Court
T.C. Memo 1960-284; 1960 Tax Ct. Memo LEXIS 7; 19 T.C.M. (CCH) 1561; T.C.M. (RIA) 60284; December 30, 1960
*7 Ronald V. Yegge, Esq., for the petitioner. William J. McNamara, Esq., for the respondent. MURDOCK
determined deficiencies in income tax for the fiscal years ended June 30, 1954 and 1955 of $55,263.51 and $18,011.84 in Docket No. 77680, and a deficiency in income tax for the fiscal year ended June 30, 1957, of $1,873.18 in Docket No. 79682. The only issue for decision is whether the petitioner is entitled to a deduction in each year for equal amounts paid to A. A. and E. B. Jones for their assumption of personal liability on surety bonds. Findings of Fact The petitioner was incorporated in Colorado on June 1, 1950. It filed its income tax returns with the director of internal revenue at Denver, Colorado, on the basis of accrual and a fiscal year ending June 30. A. A. and E. B. Jones are brothers. They formed a partnership in 1945 to carry on a construction business started by their father in 1904. The business of the partnership was turned over to the petitioner on June 1, 1950. The outstanding stock of the petitioner at times material hereto consisted of 12,922 shares of no par common stock which was originally issued 5,000 shares to E. B., 5,000 to A. A., 1,820 *8 to Burritt, 640 to Butt, 460 to Larson and 1 share each to two others. Burritt continued to own his shares until after December 11, 1953. Butt had disposed of his shares by August 25, 1952. Larson's shares were held in the treasury after February 6, 1951. The two single share certificates were returned to the treasury by December 11, 1953. A. A. Jones continued to own his 5,000 shares at all times material hereto except for some time between August 25, 1952 and December 11, 1953 when he owned only 4,000 shares. E. B. Jones increased his holdings gradually until on May 31, 1957 he owned 7,120 shares and the only other outstanding shares at that time were the 5,000 shares owned by A. A. The minutes of the annual meeting of the Board of Directors of the petitioner on June 19, 1951, recite that the following were elected to office: E. B., President; A. A., First Vice President and Treasurer; Burritt, Secretary and Assistant Treasurer; and Butt, Vice President and General Superintendent. They further recite that A. A. and E. B. stated to the Board that they had made investigations as to the compensation to be paid indemnitors on surety bonds of the company for which signatures of indemnitors *9 were required and they offered to sign such bonds as indemnitors in consideration of the payment to them of 50 per cent of the net profit on each job which they indemnified, computed according to the company's standard practice after charging against the job a reasonable part of the drawing accounts of E. B., A. A. and Burritt but before the company's income tax on this or any other profit. The offer was accepted. The drawing accounts referred to the salaries of the persons named before bonuses. The petitioner on its returns for the taxable years deducted as "bond guarantee expense" the following amounts, which were computed in accordance with the agreement and paid in equal shares to A. A. and E. B. Jones: June 30, 1954
$90,473.03
June 30, 1955
34,638.16
June 30, 1957
18,319.66
The net worth of the corporation at the date of incorporation was $40,825. It was $71,627 at the beginning of the first taxable year, $111,042 at the beginning of the second taxable year, and $156,484 at the beginning of the third taxable year. The gross sales and gross profits from sales reported for each fiscal taxable year were as follows: Gross Profits
Year
Gross Sales
from Sales
1954
$2,606,860.64
$134,027.11
1955
2,515,451.26
229,846.85
1957
1,316,025.09
67,895.99
*10 The net worth of A. A. at all times material hereto was approximately two and one-half times that of E. B. and their combined net worth was $547,000 in 1951 and 1952, $657,800 in 1953, $754,000 in 1954, and $838,000 in 1955. The surety companies required A. A. and E. B. Jones to agree to indemnify the surety company in order to obtain the bond of the surety company in each instance where they became indemnitors and obtaining the bonds from the surety company was necessary in the business of the petitioner. One of the jobs on which A. A. and E. B. Jones were required to give their individual indemnification to the surety company was the Kepner Junior High School. The total contract price on the school and the addition was $1,495,896. This job was completed during the fiscal year ended June 30, 1954, and on its return for that year the petitioner reported on the school and the addition, profit of $131,950.12, one-half of which, or $65,975.06, was paid to A. A. and E. B. Jones and was deducted on the return for that year. The petitioner on its returns for its fiscal years ended June 30, 1954 and 1955, reported a profit of $75,454.63, paid one-half of that amount to A. A. and E. *11 B. Jones, and deducted those payments on its returns for those years. Those profits were from contracts to construct the Arriba School, Technical Training Building and Training Aids Building, which contracts were negotiated with a surety company to complete the work started by some other contractor. The other two were for construction for Phillips Petroleum Company and O'Meara Motor Company. No surety bonds were furnished on these contracts because the other contracting parties requested that A. A. and E. B. Jones personally guarantee that the contracts would be completed instead of obtaining a surety bond. The petitioner was awarded contracts for the construction of three schools in Jefferson County, Colorado, in April 1954, at a cost of $697,309 and on its income tax return for the fiscal year ended June 30, 1955, reported a profit of $59,383.56, one-half of which was paid to A. A. and E. B. Jones and deducted on the return. The petitioner on its income tax return for the fiscal year ended June 30, 1957, reported a profit of $36,639.32 from a contract for building of the Ellis Elementary School, one-half of which was paid to A. A. and E. B. Jones and deducted on the income tax *12 return for that year. The contract price for that job was $664,333. The amounts of $90,473.03 for 1954, $34,638.16 for 1955, and $18,319.66 for 1957, paid to A. A. and E. B. Jones during those fiscal years were ordinary and necessary expenses of the business of the petitioner. The Commissioner in determining the deficiencies disallowed those amounts with the explanation that the amounts so paid are not allowable deductions for income tax purposes and in the alternative that the amounts claimed are considered excessive. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The evidence indicates that the contracts later obtained by the corporation were substantially in excess of those which the partnership had been obtaining and the financial condition of the corporation was such that surety companies would not issue bonds to cover its contracts without the personal guarantee of A. A. and E. B. Jones. The Commissioner concedes that the amounts here in question were actually paid to A. A. and E. B. Jones during the taxable years by the petitioner. The surety companies required the personal guarantee of these two men before they would issue *13 the surety bonds and the surety bonds were required in the instances in which they were obtained. The contention of the Commissioner is that the usual practice is for stockholder-officer indemnifiers to sign without receiving any compensation and, in the alternative, if any compensation is in order it would be much less than 50 per cent. The evidence in this case is not overwhelming in either direction. It leaves the impression that the two sets of witnesses might not have been talking about the same kind of situation. It is reasonably clear, however, that this petitioner was not strong enough financially to obtain surety bonds on its own and it was able to obtain the needed assistance from A. A. and E. B. Jones, who guaranteed the surety companies which issued bonds to cover the work of the petitioner. They also used their credit to assist the petitioner in obtaining substantial loans from banks but received no compensation for that. It is clear that if the payment of any amount to these two men for the use of their personal indemnity was proper, then such amount was an ordinary and necessary expense of the business. The petitioner called a number of witnesses who testified that *14 such payments were usual and that they personally knew of comparable payments having been made under somewhat similar circumstances. The Commissioner called witnesses who said they had never heard of such things being done but testimony of someone who has heard and does know of such payments being made is much more persuasive than the testimony of somebody who merely says he never heard of such a thing, where it is not clear that his experience would be such that he would likely hear of such things, if they were being done. The Jones brothers undoubtedly assumed substantial risks in this connection. The evidence shows that other persons assuming similar risks frequently demanded and obtained 50 per cent of the profits for thus aiding the contractor. The evidence is at least strong enough to overcome whatever presumption attaches to the Commissioner's alternative reason given in the notice of deficiency for denying these deductions, that is, his statement that the amounts were excessive. Also, the evidence clearly preponderates in favor of a holding that these amounts were ordinary and necessary expenses of this business. Decisions will be entered under Rule 50.